# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LARALEE RIEMENSNYDER,** | : | Civil No. 3:20-CV-109 |
| | : | |
| Plaintiff | : | (Chief Judge Jones) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| **WILLIAM BARR, et al.,** | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM OPINION

### I.   Factual Background

This case, which comes before us for consideration of a motion for protective order, (Doc. 55), is an employment discrimination lawsuit brought by Laralee Riemensnyder, a former Court Security Officer (CSO), against her employer, Paragon Systems.[1] In her third amended complaint, (Doc. 45), Riemensnyder brought claims pursuant to the Americans with Disabilities Act, as amended (ADAAA), the Rehabilitation Act, Title VII of the Civil Rights Act of 1964, and the Pennsylvania Human Relations Act (PHRA). According to the complaint, Riemensnyder, who is currently 70 years old, began working as a CSO at the

---

[1] Riemensnyder originally also sued the Attorney General of the United States, but the attorney general has been dismissed from this lawsuit. Currently only defendant Paragon remains in this case.

Scranton Federal Courthouse in January of 2015. Riemensnyder suffers from a longstanding, disabling medical condition, chronic obstructive pulmonary disease (COPD). Notwithstanding this medical condition, Riemensnyder alleged that she could perform the duties of a CSO with or without reasonable accommodations. In 2018, Riemensnyder underwent a cardiac catheterization procedure and was released to return to work by several doctors in August and October of that year. However, according to Riemensnyder, Paragon unlawfully refused to permit her to return to work based upon a medical report it received in violation of the ADAAA, the Rehabilitation Act, Title VII, and the PHRA.

The instant discovery dispute involves a subpoena filed by the plaintiff's counsel and served upon the United States Marshals Service. That subpoena sought videos concerning some courtroom incident that did not involve the plaintiff and took place in 2020, more than one year after the plaintiff's employment as a CSO came to an end. The ostensible purpose for subpoenaing the video was that it would show a year after Riemensnyder's employment came to an end that some other CSOs may have worked at the direction of Deputy U.S. Marshals when addressing some incident that took place in the courtroom. However, the fact that CSOs operate in conjunction with the marshals has never been disputed here, the United States is no longer a defendant in this employment discrimination, and the video sought by the plaintiff depicts an event that occurred long after her employment with Paragon

2

ended. Taking all of these factors into account, we find that this subpoena seeks information that is not relevant to issues raised in this case and we will grant this motion for protective order.

## II. Discussion

Several basic guiding principles inform our resolution of this discovery dispute which, in essence, seeks to quash a subpoena issued by the plaintiff. At the outset, "Rule 45 of the Federal Rules of Civil Procedure establishes the rules for discovery directed to individuals and entities that are not parties to the underlying lawsuit. Fed. R. Civ. P. 45. A subpoena under Rule 45 'must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1).'" First Sealord Sur. v. Durkin & Devries Ins. Agency, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013) (quoting OMS Invs., Inc. v. Lebanon Seaboard Corp., No. 08–2681, 2008 WL 4952445, at *2 (D.N.J. Nov. 18, 2008)). Rule 45 also confers broad enforcement powers upon the court to ensure compliance with subpoenas, while avoiding unfair prejudice to persons who are the subject of a subpoena's commands. In this regard, it is well settled that decisions on matters pertaining to subpoena compliance rest in the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of that discretion. R.J. Reynolds Tobacco v. Philip Morris Inc, 29 F. App'x 880, 881 (3d Cir. 2002). This far-reaching discretion extends to decisions regarding how to enforce compliance with subpoenas, where "[i]t is well-established that the scope

and conduct of discovery are within the sound discretion of the trial court." Coleman-Hill v. Governor Mifflin School Dist, 271 F.R.D. 549, 552 (E.D. Pa. 2010) (quoting Guinan v. A.I. duPont Hosp. for Children, No. 08–228, 2008 WL 938874, at *1 (E.D. Pa. Apr. 7, 2008); Marroquin–Manriquez v. INS, 699 F.2d 129, 134 (3d Cir. 1983)) (internal quotations omitted).

This broad discretion, however, is guided by certain general principles. At the outset, when considering a motion to quash or modify a subpoena, we are enjoined to keep in mind that the reach of a subpoena is defined by the proper scope of discovery in civil litigation. Wright v. Montgomery County, No. 96-4597, 1998 WL 848107, *2 (E.D. Pa. Dec. 4, 1998). The scope of what type of discovery may be compelled is defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26. Therefore, valid claims of relevance, privilege, and proportionality cabin and restrict the court's discretion in ruling on discovery issues. Moreover, in ruling upon objections to a subpoena, "this court is required to apply the balancing standards—relevance, need, confidentiality, and harm. And even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." Mannington Mills, Inc. v. Armstrong World Indus., Inc., 206 F.R.D. 525, 529 (D. Del. 2002). The court's evaluation of a motion to quash a Rule 45 subpoena is also governed by shifting burdens of proof and persuasion. Accordingly, "the subpoenaing party bears the initial burden to establish the relevance of the material sought, and then the burden shifts to the subpoenaed party to demonstrate that the subpoena seeks privileged or otherwise protected material under Rule 45." L.W. v. Lackawanna Cty., Pa., No. 3:14-CV-1610, 2015 WL 1499865, at *1 (M.D. Pa. Apr. 1, 2015) (citing In re Domestic Drywall Antitrust Litig., 300 F.R.D. 234 (E.D. Pa. 2014)).

Judged against these legal benchmarks, we conclude that Riemensnyder has not made the threshold showing of relevance that would justify production of this

video. According to the movants, this subpoena sought "Any and all video surveillance from 10/2/2020 capturing the activities of the CSO related to the sentencing of former Mayor Courtright, which would include at least one CSO in the background from all surveillance angles." Thus, the subpoena demanded videos of a courtroom encounter that did not involve the plaintiff and took place more than a year after Riemensnyder's employment drew to a close. Further, when asked to explain the relevance of this video, counsel for Ms. Riemensyder stated that the video should show: "all that a CSO does and will prove that they engage in activities that are directly related to Marshall's duties."

In our view, there are several problems with this proffer of relevance which, when combined, justify quashing this subpoena. First, the video does not depict the plaintiff and relates to events that transpired more than one year after she left Paragon's employ. Given that the video is both temporally and topically remote from the events in Riemensnyder's case, it cannot be said that this disclosure would be relevant to any party's claim or defense and proportional to the needs of the case. Further, the proffer made by plaintiff's counsel that this video "will prove that [CSOs] engage in activities that are directly related to Marshall's duties," does not bolster this claim of relevance. Riemensnyder apparently sought this video in connection with claims she was pursuing against the Attorney General, who oversees

the U.S. Marshals Service. However, in accordance with settled case law,[2] this court has already determined the U.S. Marshals Service is no longer a party in this case because it did not employ Riemensnyder. Therefore, the fact Riemensnyder wishes to prove through this video namely, "that [CSOs] engage in activities that are directly related to Marshall's duties," simply is not relevant to the claims lodged against Paragon, the sole remaining defendant in this lawsuit.

### III. Order

For the foregoing reasons, the motion for protective order (Doc. 55) is GRANTED and the subpoena issued for "[a]ny and all video surveillance from 10/2/2020 capturing the activities of the CSO related to the sentencing of former Mayor Courtright, which would include at least one CSO in the background from all surveillance angles," is QUASHED.

So ordered this 6th day of April 2021.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

---

[2] Courts have frequently rejected joint employment claims as a matter of law, finding that contract CSOs are not employees or joint employees of the Department of Justice for purposes of federal civil rights laws, and concluding instead that they were employed exclusively by independent contractors. See e.g., Urgent v. United States Marshals Serv., 704 F. App'x 107, 110 (3d Cir. 2017); Binns v. Lynch, No. CV 16-03283(RBK), 2019 WL 2503054, at *4 (E.D. Pa. June 17, 2019); McGovern v. MVM, Inc., 545 F. Supp. 2d 468, 474 (E.D. Pa. 2008).