IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LARALEE RIEMENSNYDER,** | : | Civil No. 3:20-CV-109 |
| | : | |
| Plaintiff | : | (Chief Judge Jones) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| **WILLIAM BARR, et al.,** | : | |
| | : | |
| Defendants | : | |

# MEMORANDUM

## I.  Factual Background

This case comes before us for consideration of a discovery dispute embodied in correspondence we have received from counsel, correspondence which we deem to be oral cross-motions to compel and for protective orders in this litigation. (Docs. 77-81).

The pertinent facts can be simply stated: this case is an employment discrimination lawsuit brought by Laralee Riemensnyder, a former Court Security Officer (CSO), against her employer, Paragon Systems.[1] In her third amended complaint, (Doc. 45), Riemensnyder brought claims pursuant to the Americans with

---

[1] Riemensnyder originally also sued the Attorney General of the United States, but the attorney general has been dismissed from this lawsuit. Currently only defendant Paragon remains in this case.

Disabilities Act, as amended (ADAAA), the Rehabilitation Act, Title VII of the Civil Rights Act of 1964, and the Pennsylvania Human Relations Act (PHRA). According to the complaint, Riemensnyder, who is currently 70 years old, began working as a CSO at the Scranton Federal Courthouse in January of 2015. Riemensnyder suffers from a longstanding, disabling medical condition, chronic obstructive pulmonary disease (COPD). Notwithstanding this medical condition, Riemensnyder alleged that she could perform the duties of a CSO with or without reasonable accommodations. In 2018, Riemensnyder underwent a cardiac catheterization procedure and was released to return to work by several doctors in August and October of that year. However, according to Riemensnyder, Paragon unlawfully refused to permit her to return to work based upon a medical report it received in violation of the ADAAA, the Rehabilitation Act, Title VII, and the PHRA.

The current discovery dispute involves Riemensnyder's request for a videotaped physical inspection of the courthouse for use at trial. In response to this request, Paragon notes that it does not own, lease or have a possessory interest in the courthouse building itself that would allow it to compel such an examination. Therefore, Paragon defers to the United States on this request. The government, in turn, argues that Riemensnyder should first comply with the Touhy regulations, which require a party to submit a subpoena to the affected federal agency along with

an affidavit providing a proffer of relevance and direct the agency to act upon that request before the court considers the request.

For the reasons set forth below, we agree that compliance with the <u>Touhy</u> regulations should be a prerequisite to the court's consideration of any request for a physical inspection of this federal facility. Therefore, the plaintiff is ordered to submit a <u>Touhy</u> request to the United States for its consideration.

## II.     <u>Discussion</u>

Several basic guiding principles inform our resolution of this discovery dispute. At the outset, we agree that Paragon, which does not own, lease, or have any possessory interest in the courthouse building, may not be compelled to perform this physical inspection under Rule 34.  This rule, which governs the duties of parties to allow property inspections, states that parties are required: "to permit entry onto designated land or other *property possessed or controlled by the responding party*, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2)(emphasis added). Since Paragon does not possess or control the federal courthouse, it cannot be compelled under Rule 34 to comply with a request for an inspection of this facility.

Instead, any request for an inspection of the courthouse should be addressed to the United States, a non-party, who does control and possess this facility.  Non-

party inspections of physical properties are undertaken by subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure, a fact that is explicitly recognized by Rule 34 which states that: "As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection." Fed. R. Civ. P. 34(c). "Rule 45 of the Federal Rules of Civil Procedure establishes the rules for discovery directed to individuals and entities that are not parties to the underlying lawsuit. Fed. R. Civ. P. 45. A subpoena under Rule 45 'must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1).'" First Sealord Sur. v. Durkin & Devries Ins. Agency, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013) (quoting OMS Invs., Inc. v. Lebanon Seaboard Corp., No. 08–2681, 2008 WL 4952445, at *2 (D.N.J. Nov. 18, 2008)). Rule 45 also confers broad enforcement powers upon the court to ensure compliance with subpoenas, while avoiding unfair prejudice to persons who are the subject of a subpoena's commands. In this regard, it is well settled that decisions on matters pertaining to subpoena compliance rest in the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of that discretion. R.J. Reynolds Tobacco v. Philip Morris Inc., 29 F. App'x 880, 881 (3d Cir. 2002). This far-reaching discretion extends to decisions regarding how to enforce compliance with subpoenas, where "[i]t is well-established that the scope and conduct of discovery are within the sound discretion of the trial court." Coleman-Hill v. Governor Mifflin School Dist, 271 F.R.D. 549, 552 (E.D. Pa. 2010)

(quoting Guinan v. A.I. duPont Hosp. for Children, No. 08–228, 2008 WL 938874, at *1 (E.D. Pa. Apr. 7, 2008); Marroquin–Manriquez v. INS, 699 F.2d 129, 134 (3d Cir. 1983)) (internal quotations omitted).

This broad discretion, however, is guided by certain general principles. At the outset, when considering a motion to quash or modify a subpoena, we are enjoined to keep in mind that the reach of a subpoena is defined by the proper scope of discovery in civil litigation. Wright v. Montgomery County, No. 96-4597, 1998 WL 848107, *2 (E.D. Pa. Dec. 4, 1998). The scope of what type of discovery may be compelled is defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."

5

Fed. R. Civ. P. 26. Therefore, valid claims of relevance, privilege, and proportionality cabin and restrict the court's discretion in ruling on discovery issues. Moreover, in ruling upon objections to a subpoena, "this court is required to apply the balancing standards—relevance, need, confidentiality, and harm. And even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." Mannington Mills, Inc. v. Armstrong World Indus., Inc., 206 F.R.D. 525, 529 (D. Del. 2002). The court's evaluation of a motion to quash or enforce a Rule 45 subpoena is also governed by shifting burdens of proof and persuasion. Accordingly, "the subpoenaing party bears the initial burden to establish the relevance of the material sought, and then the burden shifts to the subpoenaed party to demonstrate that the subpoena seeks privileged or otherwise protected material under Rule 45." L.W. v. Lackawanna Cty., Pa., No. 3:14-CV-1610, 2015 WL 1499865, at *1 (M.D. Pa. Apr. 1, 2015) (citing In re Domestic Drywall Antitrust Litig., 300 F.R.D. 234 (E.D. Pa. 2014)).

    Finally, when a subpoena is directed to an agency of the United States government, other considerations apply. Federal agencies prescribe regulations, commonly known as Touhy regulations, which govern subpoenas served by agencies and officials. These regulations serve important and salutary purposes. As we have explained:

6

Pursuant to 5 U.S.C. § 301, the head of each federal agency "may prescribe regulations for ... the custody, use, and preservation of its records, papers and property." See 5 U.S.C. § 301. The Supreme Court in United States ex rel. Touhy v. Ragen, 340 U. S. 462, 71 S. Ct. 416, 95 L. Ed. 417 (1951) found regulations governing the circumstances under which agency employees could testify in response to a subpoena to be valid, holding that agency employees could not be held in contempt of court for their refusal to respond to a subpoena upon the instruction of a superior. Id. at 467-68, 71 S. Ct. 416. The purpose of Touhy regulations is "to conserve governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business." Boron Oil Co. v. Downie, 873 F.2d 67, 70 (4th Cir. 1989).

Se. Pennsylvania Transportation Auth. v. Orrstown Fin. Servs., Inc., 367 F. Supp. 3d 267, 280–81 (M.D. Pa. 2019). Given the important role these regulations plays both in the operation of government and the orderly administration of justice, we have held that:

> It is clear as a general matter that courts should deny a party's motion to compel disclosure of an agency's confidential supervisory information when a litigant fails to submit information required by that particular agency's Touhy regulations. See Aiken v. Eady, No. 14-811(WJM), 2016 WL 452135 at *5, 2016 U.S. Dist. LEXIS 13932 at *13 (D.N.J. Feb. 4, 2016) (stating that "pursuant to Touhy, most courts require a party seeking information from the Government, as a non-party, to make a request to the [agency] pursuant to their administrative regulations"); McLeod v. Bentley, No. 8:13-cv-3036-T-23TBM, 2014 U.S. Dist. LEXIS 24417, at *9 (M.D. Fla. Jan. 27, 2014) (finding no final agency decision to review where "[p]etitioner has yet to submit an actual Touhy request" summarizing "information sought and its relevance to the proceeding"); Lopez v. Chertoff, No. CV-07-1566-LEW, 2009 WL 1575209, at *2 (E.D. Cal. June 2, 2009) (stating that "[t]he [C]ourt will not compel [the agency] to respond to the subpoena ... because the request did not follow [the agency's] Touhy regulations"); Lerner v. Dist. of Columbia, No. 00-1590 (GK), 2005 WL 2375175 at *2, 2005 U.S. Dist. LEXIS 10154 at

*10 (D.D.C. Jan. 7, 2005) (denying motion to compel and granting motion to quash where requester refused to " 'set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought' " (quoting regulations)); Landry v. FBI, No. 97-197, 1997 WL 375881,at *3, 1997 U.S. Dist. LEXIS 9850, at *11 (E.D. La. July 3, 1997) (stating that "[w]hether plaintiff seeks testimony or documents from the FBI, he must comply with the appropriate Touhy regulations").

Id. at 283–84.

So it is here. While Riemensnyder seeks to compel a non-party federal entity to permit a videotaped physical inspection of the federal courthouse, it is undisputed that she has not complied with the applicable Touhy regulations before seeking to compel this inspection. Since such compliance is a prerequisite to any motion to compel an inspection, Riemensnyder's oral motion to compel will be denied without prejudice to renewal, if necessary, once the Touhy regulation review process has been completed.

An appropriate order follows.

April 8, 2021

                      *S/Martin C. Carlson*
                      Martin C. Carlson
                      United States Magistrate Judge